UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME-SITE MEDIA, LLC,

     Plaintiff,

v.

CITY OF OAK PARK,

     Defendant.

Case No. 19-12143
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS [13] AND DENYING IN PART AND GRANTING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT [19]**

---

Prime-Site Media is in the billboard business: it constructs them, maintains them, and gets revenue from people who want to post messages on them. Prime-Site wanted to construct a billboard on a property located in the City of Oak Park, Michigan. So, in May 2019, Prime-Site applied for a sign permit. Oak Park denied the application.

Prime-Site then sued Oak Park. Prime-Site claims that Oak Park's sign ordinance violates the First Amendment in several ways. In fact, from Prime-Site's perspective, the sign ordinance is facially unconstitutional and so no discovery is necessary for this Court to enjoin Oak Park from enforcing it in the future and to award damages for past enforcement of it. Accordingly, soon after it filed its complaint, Prime-Site filed a motion for judgment on the pleadings.

After Prime-Site filed its motion, Oak Park amended its sign ordinance.

Following that amendment, but again, before any discovery was exchanged in this case, Oak Park moved for summary judgment. It claims that the new ordinance moots Prime-Site's request for declaratory and injunctive relief. And, sticking with Article III's "cases" or

"controversies" requirement, Oak Park argues that Prime-Site's request for damages is based on claims it has no standing to bring.

As will be explained in detail, the Court agrees in part with Oak Park. Prime-Site's request that this Court enjoin Oak Park from enforcing the old ordinance is moot. But Oak Park might or might not be right about Prime-Site's standing—discovery and more briefing is necessary to say for sure. So Oak Park is not entitled to summary judgment on Prime-Site's claims insofar as they seek damages. But Prime-Site is not entitled to judgment on those claims either—for it may lack standing to pursue them.

## I.

## A.

Because Prime-Site applied for and was denied a sign permit in May 2019, the Court starts with a description of the City of Oak Park's sign ordinance as it existed in May 2019. *See* Code of Ordinances, City of Oak Park, Michigan, App'x A, Art. XVIII, Signs (Apr. 16, 2019) [hereinafter, "2019 Ordinance"], *available at* https://bit.ly/3b9NnuN.

According to the 2019 Ordinance, Oak Park regulated signs for several reasons. These included "enabl[ing] the public to locate" businesses and products "without difficulty" and "promot[ing] the continued attractiveness of the City." *See* 2019 Ordinance § 1800. The 2019 Ordinance also explained that the proliferation of signs "would be unduly distracting to pedestrians and motorists" and create a traffic hazard. *Id.*

Several parts of the 2019 Ordinance are worth highlighting.

One is that off-site signs were prohibited. In "every zoning district within the City of Oak Park," the 2019 Ordinance declared, "[o]nly on-site signs are permitted." *See id.* § 1802.A. Although the 2019 Ordinance did not define an "on-site" sign, similar requirements in other locales

2

have been the subject of litigation. *See, e.g.*, *Thomas v. Bright*, 937 F.3d 721, 725 (6th Cir. 2019) (Tennessee); *Midwest Media Prop., L.L.C. v. Symmes Twp.*, 503 F.3d 456, 459 (6th Cir. 2007) (Symmes, Ohio). In the case law, an "on site" or "on premises" requirement means that a sign can only pertain to a business or a product that is located on the same property as the sign. *See, e.g.*, *Thomas*, 937 F.3d at 725. So, for example, a sign in the parking lot of a coffee shop could say, "Pour-Over Coffee: $4 a cup," but could not say, "Injured? Call 1-800-LAWYERS."

Also noteworthy is the 2019 Ordinance's permit requirement. The 2019 Ordinance prohibited the construction or display of a sign "without first obtaining a sign permit." *See* 2019 Ordinance §§ 1807, 1809. But there were numerous exceptions. For example, a small, noncommercial, "opinion sign" could be placed in the front yard or window "year-round" without a permit. *Id.* at § 1807.I. The 2019 Ordinance did not list the criteria that a sign applicant needed to satisfy to obtain a permit. *See id.* at § 1809.

How the 2019 Ordinance was organized is also worth a mention. Sections of the 2019 Ordinance were directed to particular zoning districts in Oak Park; subsections were directed to particular properties within the districts. For example, section 1805 regulated signs in Oak Park's "B-1" districts; then subsections A, B, C, and D of section 1805 set out regulations for "office buildings," "retail and similar buildings," "planned shopping centers under single ownership and management," and "gasoline service stations" within B-1 districts, respectively. Simplifying somewhat, "retail and similar buildings" were allowed "one freestanding monument style sign" not to exceed six feet in height and 30 square feet in area and "one wall sign per tenant" not to exceed 15 percent of the front wall or 120 square feet. *Id.* § 1805.B. In contrast, a "planned shopping center" was permitted "one freestanding (pole or monument style) shopping center identification sign per business street providing access to the site" and "one wall sign per tenant"

in the center; if the shopping center was large (more than 100,000 square feet), the freestanding pole sign could be 24 feet high and 200 square feet in area and a tenant's wall sign could be anywhere from 440 to 560 square feet. *Id.* § 1805.C. The 200 square-foot pole sign was the largest freestanding sign allowed in Oak Park under the 2019 Ordinance.

**B.**

Sometime before May 2019, Prime-Site Media obtained permission to erect a sign on private property in Oak Park. (*See* ECF No. 1, PageID.10.) The property was located at 12701 10 Mile Road. (ECF No. 1, PageID.10.) That is apparently the address of the "Scotia Stop Food Store." *See* Google Maps, https://bit.ly/3ctmYd3. The property was (and is) located in a B-1 district. (ECF No. 1, PageID.10.)

On May 15, 2019, Prime-Site applied to the City of Oak Park for a sign permit. The application was to build a new, freestanding sign on the Scotia Stop property. (ECF No. 1, PageID.130.) The application indicated that the sign would be 14 by 48 feet, for a total of 672 square feet. (*Id.*) Where the application asked Prime-Site for the "Wording" of the sign, Prime-Site wrote, "The sign intends to display noncommercial and truthful commercial messages. The noncommercial messages will commonly involve political issues, paid and unpaid religious messages, general public emergency messages of weather and Amber Alerts and missing children." (ECF No. 1, PageID.130.) The application included a mock-up of the would-be sign:



(ECF No. 1, PageID.133.)

Three weeks and two Prime-Site inquiries later, Oak Park verbally informed Prime-Site that its application had been denied. (ECF No. 1, PageID.12.) Specifically, on June 7, 2019, an official from the city's building department, Jeff Wren, told Prime-Site that the city planner had denied the application because "the City does not allow billboards." (*Id.*) It appears that Kevin Rulkowski was the city planner at the time. (*See* ECF No. 18-6, PageID.355.) Wren told Prime-Site that the city would soon send a letter detailing the denial. (ECF No. 1, PageID.12.)

Sure enough, a letter was drafted three days later. The June 10, 2019, letter stated:

The City of Oak Park has reviewed your plans for the proposed sign at the above mentioned address to determine compliance with the City of Oak Park Zoning Ordinance and all applicable codes. The plans CANNOT be approved because of the following issues: 1. BILLBOARDS ARE NOT PERMITTED.

(ECF No. 18, PageID.345 (paragraph break omitted).) The letter did not list any other issues. (*See id.*)

**C.**

About five weeks after receiving the letter, in July 2019, Prime-Site filed this lawsuit challenging the ordinance then in effect, the 2019 Ordinance. (*See* ECF No. 13, PageID.197, 207 (defining "Sign Ordinance" to be "Exhibit 1," which is a 2019 version of the sign ordinance).) Prime-Site asks this Court to declare that the 2019 Ordinance violates the First Amendment, to enjoin Oak Park from enforcing the 2019 Ordinance, and to award it damages and attorney's fees.

Prime-Site's First Amendment challenge takes three different forms. Apparently allowing for the possibility that aspects of the 2019 Ordinance were "time, place, and manner" restrictions subject to intermediate scrutiny, Prime-Site claims that the restrictions were not "narrowly tailored" to serve a "substantial" government interest. (*See* ECF No. 1, PageID.13 (Count I).) But Prime-Site also asserts that the 2019 Ordinance regulated signs based on either the speaker or the sign's content, that the ordinance was thus subject to strict scrutiny, and that Oak Park had not asserted a "compelling" interest for those regulations. (*See* ECF No. 1, PageID.15–16 (Count II).) Indeed, in Prime-Site's view, any stated government interest by Oak Park (e.g., traffic safety) is not credible given that Oak Park itself has erected several signs that plainly violate the 2019 Ordinance. (ECF No. 1, PageID.15.) Finally, Prime-Site claims that because the 2019 Ordinance lacked both specific permitting criteria and a time limit for a permit decision, the 2019 Ordinance operated as an unconstitutional prior restraint on speech. (ECF No. 1, PageID.18–19 (Count III).) All three counts of Prime-Site's complaint are facial challenges to the 2019 Ordinance. (ECF No. 13, PageID.207.)

Three months after it filed its suit, and before discovery had even started, Prime-Site moved for judgment on the pleadings. (ECF No. 13.) Prime-Site's motion relies in no small part on *Thomas v. Bright*, 937 F.3d 721 (6th Cir. 2019), a decision issued just nine days before Prime-Site filed its motion.

In *Thomas*, the Sixth Circuit addressed a First Amendment challenge to a Tennessee law that prohibited signs near public roadways without a permit unless the sign identified a service or product on the premises, i.e., an "on site" restriction. *See id.* at 726. To oversimplify slightly, the Sixth Circuit held that because a Tennessee official would have to read and interpret the message on the sign to decide whether it pertained to a service or product on the premises, and thus whether it met the "on site" requirement, the regulation was content-based and subject to strict scrutiny. *Id.* at 730, 733. The Sixth Circuit further held that the Tennessee law could not withstand strict scrutiny. *Id.* at 738.

### D.

Whether it got notice of *Thomas* from Prime-Site's motion or another way, Oak Park soon learned of the decision. About a month after the *Thomas* decision, Rulkowski (the city planner) wrote a memorandum to the mayor and the city council. His October 2019 memo stated, "In September, the Sixth Circuit Court of Appeals in *Thomas v. Bright* affirmed that the government cannot distinguish between on-premise and off-premise signage because it is an unconstitutional content-based distinction. This ruling potentially will require modifications to the proposed content-neutral sign regulations the Planning staff are currently developing." (ECF No. 18-6, PageID.355.) The Planning Division recommended a "six month moratorium" on sign applications so that the regulations related to off-premise signs could be evaluated. (*Id.*)

Perhaps due to this lawsuit, *Thomas*, or both, Oak Park revised its sign ordinance. *See* City of Oak Park, Michigan, Ordinance No. O-19-692 (eff. Dec. 15, 2019) [hereinafter "2020 Ordinance"], *available at* https://bit.ly/2VvnlfC. Because the new sign ordinance became effective very late in 2019, for convenience, the Court will refer to this new version as the "2020 Ordinance."

The 2020 Ordinance differs from the 2019 Ordinance in a few ways worth noting. For one, the 2020 Ordinance provides more detail about the sign permit process and expressly provides that an application will be decided "within 21 days after receipt." *Compare* 2020 Ordinance § 1803, *with* 2019 Ordinance § 1809. Second, unlike the 2019 Ordinance, the 2020 Ordinance does not have an "on site" requirement. (But the "findings and purpose" section of the 2020 Ordinance does state that "off-premise" signs are "unduly distracting," that they contribute to "visual clutter," and that the city aims to "prevent off-premise signs from conflicting with other allowed land uses." 2020 Ordinance § 1800.G, H, I.6.)

The 2020 Ordinance also—in form at least—regulates signs in the B-1 district differently from the 2019 Ordinance. As noted, under the 2019 Ordinance, "retail and similar buildings" in B-1 districts were allowed a freestanding monument sign 6 feet high and 30 square feet in area but large "planned shopping centers" in B-1 districts were allowed a freestanding pole sign up to 24 feet high and 200 square feet in area. *Compare* 2019 Ordinance § 1805.B, *with id.* § 1085.C. The 2020 Ordinance does not use the labels "office buildings," "retail and similar buildings," and "planned shopping centers." Instead, it provides that any business in a B-1 district is permitted a freestanding sign 6 feet high and 30 square feet in area but that a large "business center" is allowed a freestanding sign up to 24 feet high and 200 square feet in area. *See* 2020 Ordinance § 1807; *id.* § 1801 (defining "business center").

8

**E.**

About a month after the 2020 Ordinance went into effect, the City of Oak Park moved for summary judgment based solely on Article III justiciability concepts. (ECF No. 19.) Regarding Prime-Site's request for declaratory and injunctive relief, Oak Park argues that the 2020 Ordinance renders that request moot. (ECF No. 19, PageID.370.) As for Prime-Site's request for damages, Oak Park argues that the provisions of the 2019 Ordinance that Prime-Site challenges did not cause it injury and so Prime-Site lacks standing to challenge those provisions. (ECF No. 19, PageID.373–76.) Oak Park further argues that Prime-Site has not challenged the 2019 Ordinance's restrictions on sign height, size, and setback, and so a finding that other provisions are unconstitutional would do nothing to redress Prime-Site's injuries—the height, size, and setback restrictions would still prevent Prime-Site from putting up its billboard. (ECF No. 19, PageID.376–79.)

**II.**

The Court begins with the effect of the 2020 Ordinance on this litigation and Oak Park's assertion that "Plaintiff's challenges to the [2019] Ordinance and its claims for declaratory and injunctive relief are moot." (ECF No. 19, PageID.371.)

The mootness analysis can be broken down into two parts: (1) are the changes to the sign ordinance here to stay, and (2) if so, has the ordinance "been sufficiently altered so as to present a substantially different controversy"? *Hill v. Snyder*, 878 F.3d 193, 204 (6th Cir. 2017) (internal quotation marks omitted).

The answer to the first question is "yes." "Legislative action ordinarily moots a case midstream, when a challenged provision is repealed or amended during the pendency of the litigation." *See id.* But when a new regulation is not promulgated through "formal, legislative-like procedures," and instead promulgated by a single government agency or official (perhaps the

defendant), courts question whether the change in law is just a convenient way to end a lawsuit. *See Speech First, Inc. v. Schlissel*, 939 F.3d 756, 768 (6th Cir. 2019). Here there was a "formal, legislative-like procedure": the 2020 Ordinance was voted on by the members of Oak Park's planning commission and then adopted by the city council. (ECF No. 28, PageID.521, 531; *see also* ECF No. 19, PageID.449.) Moreover, the changes to the ordinance were in part due to the Sixth Circuit's decision in *Thomas*, which in turn applied the Supreme Court's decision in *Reed v. Town of Gilbert,* 576 U.S. 155 (2015); binding precedent is another good reason to think that Oak Park will not revert to the 2019 Ordinance.

Although there is no reason to think that Oak Park will go back to its old way of regulating signs, that does not end the mootness inquiry. "Where the changes in the law arguably do not remove the harm or threatened harm underlying the dispute, the case remains alive and suitable for judicial determination." *Sullivan v. Benningfield*, 920 F.3d 401, 410–11 (6th Cir. 2019) (internal quotation marks omitted). Prime-Site pleads that many of Oak Park's restrictions on signs violate the First Amendment. If the 2020 Ordinance has those same restrictions (or even some of them), then Oak Park has not ceased all of the conduct that Prime-Site has challenged. In other words, the mere fact that Oak Park passed a new sign ordinance is not, by itself, enough to call it a day. Take a concrete example: in its complaint, Prime-Site claimed that Oak Park's "on site" requirement is a content-based restriction that cannot survive strict scrutiny. If that requirement persisted in the 2020 Ordinance, then at least that claim would not be moot. Thus, the further question this Court must answer is whether the new sign ordinance has created a "substantially different" controversy from the one that existed before the new ordinance. *See Hill*, 878 F.3d at 204.

Prime-Site's complaint and its motion for judgment on the pleadings frames the controversy as it existed before the 2020 Ordinance. So those two documents are a good place to start in deciding whether there is now a "substantially different" controversy.

In its complaint, Prime-Site asserted that Oak Park's sign ordinance "facially makes distinctions in its regulations of signs based on their content" and provided, as examples, Oak Park's separate regulation of "building identification" signs, "shopping center identification signs," "temporary political signs," and "noncommercial opinion signs." (*See* ECF No. 1, PageID.3.) Prime-Site also asserted that "shopping center" and "building identification" signs were allowed to be much larger and higher than a sign displaying a political, religious, or opinion message. (ECF No. 1, PageID.14.) Prime-Site also complained that the sign ordinance allowed "shopping center identification signs" up to 200 square feet but "noncommercial opinion" and "temporary political" signs were limited to just 12 square feet. (ECF No. 1, PageID.16.) Finally, Prime-Site claimed that Oak Park gave officials "unbridled discretion" in denying a sign permit and that there were no time limits on a permit decision. (ECF No. 1, PageID.18.)

The arguments in Prime-Site's motion for judgment on the pleadings track its complaint. There, Prime-Site pointed out that "freestanding shopping center identification signs" are allowed to be permanent and illuminated, but "a sign displaying support for a political candidate" can only be temporary and unilluminated. (ECF No. 13, PageID.211.) It noted that a church in a residential district "may display any theological viewpoint," but a church in a B-1 district "may only display a sign that identifies the church itself." (ECF No. 13, PageID.211–212.) Prime-Site's motion made additional, similar comparisons.

With that summary of Prime-Site's complaint and motion, it is not difficult to see that the alterations to Oak Park's sign ordinance "present a substantially different controversy." *Hill*, 878

F.3d at 204. Prime-Site's claims relied in part on the fact that the 2019 Ordinance had an "on site" requirement. (*See* ECF No. 13, PageID.213.) But the 2020 Ordinance does not have any "on site" requirement. Prime-Site's claims relied in part on the fact that the 2019 Ordinance had requirements specific to churches, schools, shopping centers, political signs, and noncommercial opinion signs. But the 2020 Ordinance does not contain requirements specifically for churches, schools, shopping centers, political signs, or noncommercial opinion signs. Prime-Site's prior-restraint claim presents a closer call; but the 2020 Ordinance does describe the permitting process in greater detail than the 2019 Ordinance; and the 2020 Ordinance includes an explicit 21-day decision period. In all, the 2020 Ordinance has substantially changed the controversy. Or, stated somewhat differently, Prime-Site's claims and arguments were tailored to the language of the 2019 Ordinance and would require significant alterations to fit the language of the 2020 Ordinance.

And to the extent that it is debatable whether the 2020 Ordinance has substantially changed some of Prime-Site's claims, Prime-Site has not debated it. In its motion, Oak Park asserted that "the City's amended Sign Ordinance no longer contains the distinctions that Plaintiff claims are content-based" and that the new ordinance added "several narrow, objective, and definite standards to help guide its decision in granting or denying a permit application." (ECF No. 19, PageID.371–372.) In response, Prime-Site does not argue that its First Amendment claims, hemmed closely to the language of the 2019 Ordinance, can be stretched to fit the 2020 Ordinance. (*See* ECF No. 25, PageID.468, 470–471.)

Instead, Prime-Site argues that there is no 2020 Ordinance. Prime-Site points out that a Michigan zoning law provides, "Before submitting its recommendations for a proposed zoning ordinance to the legislative body, the zoning commission shall hold at least 1 public hearing." Mich. Comp. Laws § 125.3306. And, says Prime-Site, Oak Park's own laws require a hearing:

"The planning commission shall make no decision except in a specific case and after requiring hearing, if applicable." Code of Ordinances, City of Oak Park, Michigan, App'x A, Art. XXIII, § 2314 (Oct. 30, 2019), *available at* https://bit.ly/2xHK6FA. Then, referring to a recording of a November 2019 meeting of the City's planning commission, Prime-Site argues, "Only after the vote [on the new sign ordinance] did the Planning Commission open a public hearing wherein the chair crassly began it by stating 'anybody want to speak' and, after a two second pause, remarked in a similar tone to the audience 'that's very wise.'" (ECF No. 25, PageID.469.) Thus, says Prime-Site, Oak Park "failed to hold a public hearing prior to voting on its recommendation to the City Council" and "the so-called ordinance which the City claims replaces the existing Sign Ordinance is invalid as a matter of law." (ECF No. 25, PageID.469–470.)

Prime-Site mischaracterizes the November 2019 meeting.

It is true, as Prime-Site claims, that *after* the members of the City's planning commission voted to recommend a new sign ordinance to the city council, someone, apparently Rulkowski (recall he was the city planner who wrote the memo about *Thomas* and, apparently, reviewed Prime-Site's permit application), stated, "Technically, we should open a public hearing." (ECF No. 24, Audio at 5:00–5:03.) This prompted someone, apparently Chairperson Gary Torgow, to say, "OK we're going to open a public hearing. Anybody want to speak? [Brief pause.] That's very wise. We're going to close the public hearing." (ECF No. 24, Audio at 5:05–5:15.) And, in further support of Prime-Site's position, the meeting minutes indicate that Torgow both opened and closed the public hearing at "7:04 p.m." (ECF No. 28, PageID.531.) All of that suggests no legitimate public hearing was held.

But all of that must be taken in context of what transpired during the preceding five minutes. Well before the vote, Torgow, apparently reading from the meeting agenda, stated,

"We're moving to item number 6 which is a public hearing. This is a public hearing to consider text amendments to Article II [inaudible]. . . . We have a public hearing now as well as the sign amendments." (ECF No. 24, Audio at 0:00–0:30.) The inaudible portion can be filled in by the meeting agenda; it says, "6. PUBLIC HEARING: A. Public Hearing to consider text amendments to Article II, Definitions and XVIII, Signs." (ECF No. 28, PageID.528.) And after Torgow moved to that agenda item and opened the public hearing, Rulkowski gave a description of the changes to the sign ordinance, several audience members asked questions about it, and Rulkowski answered the questions. (ECF No. 24, Audio at 0:30–4:25.) Only after all of that did the planning commission take a vote. (*Id.* at 4:25–4:53.) So when Torgow then asked "Anybody want to speak?" and then quickly said, "That's very wise," he seemingly did so because the substance of the public hearing had already occurred before the vote. Indeed, the audience laughed at Torgow's "very wise" remark, indicating that it understood that the opening and closing of the public hearing was to comply with technical requirements. Taking Torgow's statements in context, it simply is not reasonable to find that Michigan's public hearing requirement or the City's hearing requirement was not satisfied.

Prime-Site makes several other arguments in response to Oak Park's assertion of mootness.

For one, Prime-Site argues that even if there is a new sign ordinance, it can still "seek an injunction prohibiting the City from forbidding Prime-Site Media from constructing the sign that it should have been able to display but for [the] City's enforcement of the unconstitutional Sign Ordinance." (ECF No. 25, PageID.470–471.) Prime-Site cites *Lamar Advertising Co. v. Township of Elmira*, 328 F. Supp. 2d 725 (E.D. Mich. 2004), in support of this assertion.

There, Lamar wanted to construct a billboard along a state highway that passed through Elmira Township. *Id.* at 728. At the time Lamar sought to construct the billboard, the Township's

14

ordinance did not prohibit billboards and, in fact, placed "exclusive control of billboard regulation along state roads" in the hands of the State of Michigan. *Id.* at 728, 732. Perhaps out of an abundance of caution or confusion over the law, Lamar submitted sign permit applications to both the State and Township. *Id.* at 728, 730. The State, contrary to a 10-day time limit set by statute, *id.* at 732, took two-and-a-half months to grant Lamar's application, *id.* at 728, 730, 732. By then, the Township—well aware of Lamar's intent to construct a billboard—had amended its ordinance to prohibit certain billboards. *Id.* at 728–29. And after that amendment, the Township, which had effectively sat on Lamar's application for months, denied Lamar a permit. *Id.* at 730. On those facts, the court indicated that the Township's refusal to make a permit decision until after it amended its ordinance was an unconstitutional prior restraint on speech. *See id.* at 733–34. The court held that "equity require[d]" it to evaluate the Township's "action[s] on Lamar's applications under the rules that were in effect on the date of those applications." *Id.* at 732. And because the rules in effect when Lamar applied for permits plainly indicated they should have been granted, "Lamar as a matter of law was entitled to a permit to erect a billboard." *Id.* at 734. Further—and this is apparently the portion of *Lamar* that Prime-Site latches onto—Lamar was entitled "to the declaratory and injunctive relief it [sought] with respect to proceeding with the erection of its billboard." *Id.*

The equities present in *Lamar* are simply not present here. Prime-Site seems to argue that the 2019 Ordinance was facially unconstitutional when it applied for a permit and so, like Elmira Township, Oak Park lacked any legal basis to deny it a permit, i.e., that under all *valid* laws that existed when it applied for a permit, it should have been granted one. (*See* ECF No. 25, PageID.470–471.) But in *Lamar*, "the parties agree[d] that at the time Lamar applied for permits to erect its billboard, only the MDOT had jurisdiction to regulate the area in question." 328 F.

Supp. 2d at 732. And "[t]he parties agree[d] further that Elmira Township enacted its new sign ordinance to become effective after the MDOT should have acted on Lamar's application." *Id.* In other words, the parties agreed that at the time Lamar applied for a permit, Elmira had no authority to bar Lamar's billboard and that Elmira was able to amend its ordinance only because the entity with sole authority to grant a permit had unlawfully delayed in doing so. *See id.* Here, the parties do not agree that Oak Park lacked authority to bar Prime-Site's sign. And there is no third party with authority who unlawfully delayed a decision such that Oak Park could add a new prohibition on Prime-Site's sign. Further, in *Lamar*, it "*plainly* appear[ed] from the undisputed facts in this record that Lamar's application ought to have been granted under the rules in effect on the application date." *Id.* at 732 (emphasis added). The situation here is less plain: there may be an independent, constitutional provision of the 2019 Ordinance that Oak Park used to deny Prime-Site a permit. So while "equity require[d]" the court in *Lamar* to examine the laws as they existed when Lamar applied, as things presently stand, equity does not require this Court to do the same.

*Lamar* aside, Prime-Site also argues, "No matter what the City changes in its ordinance, Prime-Site Media will continue to suffer substantial injuries as a result of its First Amendment rights being violated." (ECF No. 25, PageID.470.) But if Prime-Site means there is ongoing harm, its assertion surely cannot be true—Oak Park could tomorrow change its ordinance to allow Prime-Site to construct its billboard. Perhaps Prime-Site means that Oak Park cannot make changes to its ordinance that will remedy past First Amendment violations. While that is probably true, it is also not relevant: Oak Park did not argue and this Court does not find that Prime-Site's request for damages is moot.

Lastly, Prime-Site asserts, "At the conclusion of litigation, regardless if the City enacts a new sign ordinance in the interim, Prime-Site Media is free to request an injunction to prohibit the

16

City from resuming its unconstitutional conduct in the future." (ECF No. 25, PageID.470–471.) This assertion runs into standing or ripeness problems. As stated above, there are good reasons to think that Oak Park will not revert to the 2019 Ordinance. And Prime-Site has not given the Court any reason to think Oak Park will do so. *See Grendell v. Ohio Supreme Court*, 252 F.3d 828, 833 (6th Cir. 2001) ("[W]here the threat of repeated injury is speculative or tenuous, there is no standing to seek injunctive relief.").

In short, Prime-Site's request for a declaration that the 2019 Ordinance is unconstitutional and request to enjoin Oak Park from enforcing the 2019 Ordinance (*see* ECF No. 1, PageID.15, 17; ECF No. 13, PageID.197) are moot.[1]

### III.

That leaves Prime-Site's request for monetary damages for Oak Park's past enforcement of the 2019 Ordinance. *See Youngstown Publ'g Co. v. McKelvey*, 189 F. App'x 402, 407 (6th Cir. 2006) ("While a claim for injunctive relief may be mooted, a viable claim for past infringement of a constitutionally protected right survives.").

Here too, Oak Park reminds the Court of the limits set by Article III of the Constitution: Oak Park says that this Court cannot award damages because Prime-Site lacks standing. "A plaintiff has Article III standing if he suffered an injury in fact that is [1] concrete, particularized, and actual or imminent; [2] fairly traceable to the defendant's challenged conduct; and [3] likely to be redressed by a favorable judgment." *Shelby Advocates for Valid Elections v. Hargett*, 947 F.3d 977, 980–81 (6th Cir. 2020) (citing *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547–48 (2016)).

---

[1] The Court *might* be open to revisiting the question of whether a successful challenge to the 2019 Ordinance can result in an order allowing Prime-Site to erect a billboard on the Scotia Stop property *if* certain redressability and merits issues end up being decided in Prime-Site's favor. The Court discusses the redressability issue in detail below.

Oak Park's argument is two pronged: the provisions of the 2019 Ordinance that Prime-Site has challenged did not cause it injury and, even if Prime-Site's injury is traceable to the provisions it has challenged, this Court cannot redress that injury. (ECF No. 19, PageID.372–379.)

## A.

Before wading into the details of Oak Park's two standing arguments—and before explaining why discovery and additional briefing are necessary to properly address one of them—the Court addresses Prime-Site's claim that *Wagner v. City of Garfield Heights*, 675 F. App'x 599 (6th Cir. 2017), establishes its standing here.

In that case, Frank Wagner put up a 16-square-foot sign in his yard stating that councilwoman Tracy Mahoney's politics were "Mahoney Baloney." *Id.* at 602. After Mahoney contacted the mayor, the city wrote a letter to Wagner asserting that his yard sign violated a provision of the city's ordinance limiting political yard signs to six square feet (section 1140.362). *Id.* Wagner sued the city, claiming that section 1140.362 was unconstitutional. The city responded by asserting that even if that was so, another ordinance (which limits temporary signs to 12 square feet) would have prohibited Wagner's sign and so Wagner lacked standing to challenge section 1140.362. *Id.* at 605. Not so, said the Sixth Circuit. The Court explained that Wagner had not sought an injunction that would allow him to display his "Mahoney Baloney" sign. *Id.* Instead, Wagner had sought to enjoin the city from "enforc[ing]" section 1140.362, the provision that the city had threatened to enforce in its letter. *Id.* at 606. His injury "remain[ed] unaffected by the ability of [the city] to employ a different ordinance to achieve its desired outcome." *Id.* As such, Wagner had standing to attempt to stop the city from enforcing section 1140.362. *Id.*

Prime-Site thinks it has standing for the same reason Wagner did: "Like the plaintiff in *Wagner*, Prime-Site Media seeks an injunction and other relief stemming from 'the enforcement' of the Sign Ordinance, not the denial of a sign permit." (ECF No. 25, PageID.487.)

*Wagner* does not help Prime-Site clear the standing hurdle. Wagner sought to enjoin the current and future enforcement of an ordinance still in effect. Oak Park's 2019 Ordinance is no longer in effect. And, for reasons explained, Prime-Site's request to enjoin enforcement of that ordinance is moot. Here, the question is Prime-Site's standing to recover damages for the past enforcement of an ordinance no longer in effect. So *Wagner* is not on point.

## B.

With *Wagner* out of the way, the Court can turn to Oak Park's assertion that Prime-Site has no standing to recover damages. As noted, Oak Park argues that (1) provisions of the 2019 Ordinance that Prime-Site has challenged did not cause it injury and (2) that any injury Prime-Site suffered is not redressable. (ECF No. 19, PageID.372–379.) The Court takes the arguments in turn.

### 1.

Oak Park's claim that Prime-Site was not injured by the provisions it challenges is based on *Prime Media, Inc. v. City of Brentwood*, 485 F.3d 343 (6th Cir. 2007). So a summary of that case is in order.

There, Brentwood had denied Prime Media a permit to construct a 672-square-foot billboard because under the city's ordinance, the billboard was too large, too tall, and was an off-premise sign. 485 F.3d at 346. Brentwood sued, alleging that a slew of provisions of Brentwood's ordinance were facially unconstitutional. *Id.* at 347 & n.1. While the litigation was pending, Brentwood eliminated the off-premise ban from its ordinance. *Id.* at 346. As for the ordinance's size and height restrictions, the Sixth Circuit had upheld those provisions in a prior appeal. *Id.* at

348 (citing *Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 821 (6th Cir. 2005)). Remaining, then, was Brentwood's assertion that "numerous other provisions of the ordinance [were] also facially invalid under the First Amendment." *Id.* In deciding whether Prime Media had standing to challenge those provisions, the Sixth Circuit stated, "The critical inquiry is whether the plaintiff can allege an injury arising from the specific rule being challenged, rather than an entirely separate rule that happens to appear in the same section of the municipal code." *Id.* at 351. Aside from the height and size requirements (which had already withstood Prime Media's challenge), Prime Media sought to challenge provisions of the ordinance that appeared to be "entirely unrelated to its line of business," and thus, injury from these provisions was "conjectural or hypothetical." *Id.* at 352–53. As such, Prime Media lacked Article III standing to challenge those provisions. *Id.* at 353–54.

There are some similarities between this case and *Prime Media*. Some of the 2019 Ordinance provisions that Prime-Site claims were based on content or speaker are unrelated to the billboard that it wanted to erect. For instance, Prime-Site complains that under the 2019 Ordinance, a homeowner selling her house was allowed a six-foot high "open house" sign in her yard while a homeowner hosting a garage sale was allowed one four-foot high sign in her yard and a second sign at the end of the street. (ECF No. 13, PageID.211 (citing 2019 Ordinance §§ 1807.L, 1807.J).) But nothing before the Court indicates that Prime-Site's billboard would have been used to promote an open house or a garage sale. Similarly, Prime-Site complains that under the 2019 Ordinance, a church building in a residential district was allowed a sign displaying scripture (or another theological message) but a church building in a business district was only allowed a sign with its name. (ECF No. 13, PageID.212 (citing 2019 Ordinance §§ 1803.A, 1805.A.) But the billboard Prime-Site wanted to construct was on retail property and thus not subject to the

provisions of the 2019 Ordinance governing church property. Prime-Site also complains that the 2019 Ordinance regulated flags and banners based on their content. (ECF No. 13, PageID.212 (citing 2019 Ordinance §§ 1807.G.3, G.4).) But Prime-Site wanted to raise a billboard, not a flag or banner.

That said, Oak Park's argument that Prime-Site's injury is not fairly traceable to the provisions it has challenged does not warrant summary judgment. Although it is not known what provisions of the 2019 Ordinance Oak Park relied on to deny Prime-Site's permit—the denial merely says "BILLBOARDS ARE NOT PERMITTED" (ECF No. 1, PageID.136)—Rulkowski (or whoever made the decision to deny the permit) must have had at least one provision of the 2019 Ordinance in mind. And here, Prime-Site has challenged "the complete [2019] Sign Ordinance as a comprehensive unconstitutional scheme of speech regulation." (ECF No. 25, PageID.472; *see also* ECF No. 18, PageID.330 (claiming that 2019 Ordinance "must be invalidated in its entirety"); ECF No. 25, PageID.465.) And while it was not the focus of its complaint or Rule 12(c) motion, Prime-Site's most recent brief includes a specific challenge to section 1805.B. (ECF No. 25, PageID.474–477.) According to Oak Park, section 1805.B governed signs on the Scotia Stop Food Store property. (*See* ECF No. 16, PageID.304, 306.) Accordingly, the Court finds that Prime-Site has already challenged (and, if needed, could readily amend its complaint to challenge) at least one provision of the 2019 Ordinance that Oak Park invoked (albeit, silently) to deny Prime-Site's permit application. By contrast, all of the provisions that Prime Media lacked standing to challenge appeared to be "entirely unrelated to [Prime Media's] line of business." *See Prime Media*, 485 F.3d at 353.

**2.**

While Prime-Site has challenged at least one provision of the 2019 Ordinance that caused it injury, the Court is not certain that it can redress Prime-Site's injury. Discovery and more briefing are necessary to know for sure. For now, it suffices to explain the uncertainty.

A good starting point is the case Oak Park relies upon, *Midwest Media Property, L.L.C. v. Symmes Township*, 503 F.3d 456 (6th Cir. 2007). Midwest Media had filed nine applications to erect billboards in Symmes Township; the Township denied all nine. *Id.* at 459. Common to all nine denials was a finding that the billboards were off-premise signs. *Id.* at 459–60. But in most of the denials, the Township also found the proposed billboards violated height and size restrictions; and for the few denials that the Township had not cited height and size as a basis for denying the permit, it later stated that those permits "could have" been denied based on height and size. *Id.* Midwest Media sued the Township, claiming that the ban on off-premise signs and the permitting process itself were unconstitutional. *Id.* at 460. But Midwest Media did not challenge the Township's size and height restrictions. *Id.* And, said the Court, the size and height restrictions "comfortably st[ood] on their own," i.e., they were "severable from the allegedly unconstitutional provisions." *Id.* at 464–65. Given that the permits were (or "could have" have been) denied based on the Township's size and height restrictions, that those restrictions were severable, and that Midwest had not challenged those provisions, it did not matter whether the off-premise ban and permitting process were unconstitutional. "For even in the absence of [the off-premise and permitting] regulations, the size and height restrictions still would preclude the township from approving their sign applications." *Id.* at 461–62. So even if Midwest Media had been injured by the off-premise ban and permitting process, invalidating those regulations would not have redressed its injury. *Id.*

22

With *Midwest Media* as context, the Court can now explain why Prime-Site's injuries from the 2019 Ordinance might not be redressable. Suppose—and the current record makes it impossible to say—that Oak Park denied Prime-Site's permit based on four provisions of the 2019 Ordinance. If even one of those four provisions stands on its own base (i.e., remains enforceable once severed) and can withstand Prime-Site's challenge, then it would not matter whether the Court finds the other three provisions unconstitutional. In that scenario, the Court could not redress Prime-Site's injury no matter the constitutionality of the other three provisions. *See Midwest Media*, 503 F.3d at 465 (stating that court could not redress injury where plaintiff "attacks, say, four out of five substantive provisions of a sign ordinance" and the fifth provision bars the sign); *accord Advantage Media, L.L.C. v. City of Eden Prairie*, 456 F.3d 793, 801 (8th Cir. 2006).

Thus, this Court needs to know at least three things to decide whether it can award Prime-Site damages for injuries caused by Oak Park's past enforcement of the 2019 Ordinance. One: Which provisions of the 2019 Ordinance were (or could have been) the basis for denying Prime-Site a permit to construct a billboard on the Scotia Stop Food Store property? Two: Which, if any, of those provisions are severable? Three: Which, if any, of the severable provisions are constitutional? If there is even one constitutional, severable provision of the 2019 Ordinance that Oak Park used (or could have used) to deny Prime-Site its permit, finding any number of other provisions of the 2019 Ordinance unconstitutional would not redress Prime-Site's injury.

But as things now stand, the Court cannot answer these three questions. It does not know what provisions of the 2019 Ordinance underlie Oak Park's decision to deny Prime-Site's permit application. So some discovery is necessary. And some briefing is needed too. Neither side has adequately briefed the issue of severability. True, the parties did brief whether the requirement to obtain a permit is severable. But the Court needs to know whether there is *any* severable provision

23

of the 2019 Ordinance that was used to block Prime-Site's billboard. The parties have not briefed, for example, the severability of the applicable height, size, and setback restrictions. (Prime-Site does argue that the provisions of the 2019 Ordinance are intertwined with each other, but it does so at a high level of generality and does not make severability arguments tailored to the specific provisions that applied to its billboard. (*See* ECF No. 18, PageID.330; ECF No. 25, PageID.465, 472.))

What has been said so far is almost enough to deny both sides' motions insofar as they pertain to Prime-Site's request for damages. (As explained, the Court will grant Oak Park's motion as to Prime-Site's request for declaratory and injunctive relief.) But one issue remains.

It appears that one of Prime-Site's challenges to the 2019 Ordinance does not depend on whether any particular provision is severable. Specifically, Prime-Site argues that the entire 2019 Ordinance is unconstitutional because its restrictions on speech are not supported by substantial (let alone compelling) governmental interests. (ECF No. 13, PageID.220.) Although traffic safety and aesthetics may well be substantial government interests, *see Prime Media, Inc. v. City of Brentwood*, 398 F.3d 814, 818–19 (6th Cir. 2005), Prime-Site argues that Oak Park did not truly seek to advance those interests via the 2019 Ordinance. Prime-Site points out that Oak Park itself put up several signs that violated the 2019 Ordinance. (ECF No. 13, PageID.221–224.) So, says Prime-Site, Oak Park's interests in traffic safety and aesthetics are not credible given that its very own signs undermine its stated interests. (ECF No. 13, PageID.222.)

While this claim appears to be independent of any severability determination, the Court declines to address it right now. Oak Park has not yet explained why its own signs do not undermine its stated interests in traffic safety and aesthetics. Oak Park probably should have provided an explanation as Prime-Site argued that its governmental interests were not credible.

(ECF No. 1, PageID.7–9, 14; ECF No. 13, PageID.220–224.) So Prime-Site has some basis to assert that Oak Park's silence is a concession. (*See* ECF No. 18, PageID.325.) But as Prime-Site's own authority indicates, it is within the Court's discretion to equate silence with concession. And here, the Court is reluctant to make the significant finding that the entire 2019 Ordinance violated the First Amendment without seeing if Oak Park can excuse its failure to respond to Prime-Site's claim and, if so, explain why its own signs do not undermine its interests. Especially in a case where, it appears, the parties have not engaged in any formal discovery.

## IV.

For the reasons given, Prime-Site's motion for judgment on the pleadings (ECF No. 13) is DENIED. Oak Park's motion for summary judgment (ECF No. 19) is GRANTED IN PART and DENIED IN PART. In particular, Prime-Site's request for a declaration that the 2019 Ordinance is unconstitutional and request to enjoin Oak Park from enforcing the 2019 Ordinance (*see* ECF No. 1, PageID.15, 17; ECF No. 13, PageID.197) are moot. But Prime-Site's backward-looking claims—insofar as they seek damages for past enforcement of the 2019 Ordinance—remain.

The parties are to attend a telephone status conference on May 28, 2020 at 1:00 p.m. to set a schedule going forward. No motions should be filed before the conference.

SO ORDERED.

Dated: May 20, 2020

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE