UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

PRIME-SITE MEDIA, LLC,

    Plaintiff,

v.

CITY OF OAK PARK,

    Defendant.

Case No. 19-12143
Honorable Laurie J. Michelson

**OPINION AND ORDER DENYING MOTION FOR RECONSIDERATION [34]**

Via a prior opinion and order, the Court dismissed Prime-Site Media's claims for injunctive and declaratory relief (the damages claims remained). *Prime-Site Media, LLC v. City of Oak Park*, No. 19-12143, 2020 WL 2556782, at *12 (E.D. Mich. May 20, 2020). Prime-Site wants this Court to reconsider that decision. The Court has reviewed its prior decision and the relevant evidence and concludes that it did not err. Prime-Site's motion for reconsideration will be denied.

**I.**

Some factual and procedural history sets the stage for Prime-Site's motion for reconsideration.

Prime-Site Media wanted (and still wants) to construct a billboard in the City of Oak Park. In 2019, it applied for a permit to construct one, but the City denied Prime-Site's application. Prime-Site then filed this lawsuit, claiming that the City's sign ordinance violated its rights under the First Amendment. Prime-Site sought a declaration that the City's sign ordinance was unconstitutional, an injunction preventing its enforcement, and damages. While the suit was pending, the City enacted a new sign ordinance. The City later sought summary judgment, arguing

in part that Prime-Site's requests for declaratory and injunctive relief were moot—after all, the ordinance that was the subject of Prime-Site's complaint no longer existed.

The Court agreed with the City on that point. In particular, the Court found that there was no indication that the City would revert back to the old ordinance (the 2019 Ordinance) and that the new ordinance (the 2020 Ordinance) was different enough from the 2019 Ordinance that the controversy had substantially changed. *Prime-Site*, 2020 WL 2556782, at *5. The Court noted that in response to the City's assertion of mootness, "Prime-Site [did] not argue that its First Amendment claims, hemmed closely to the language of the 2019 Ordinance, can be stretched to fit the 2020 Ordinance." *Id.* at *6.

Rather than argue that the claims of its complaint withstood the changes in the sign ordinance, Prime-Site argued that there was no 2020 Ordinance. In its view, the 2020 Ordinance had not been lawfully enacted. (*See* ECF No. 25, PageID.469.) Prime-Site argued that a provision of Michigan's Zoning Enabling Act, Mich. Comp. Laws § 125.3306(1), and a provision of the City's own zoning ordinance, City of Oak Park, Mich., Code § 2314.B, required Oak Park's planning commission to hold a public hearing before voting on the new ordinance. (ECF No. 25, PageID.469.) From Prime-Site's perspective, the planning commission failed to hold a public hearing before voting. (*Id.*) So, Prime-Site argued, the 2019 Ordinance, being the last validly enacted ordinance, was the one still in effect. (*Id.*) It followed that its claims for injunctive and declaratory relief were not moot. (*See id.*)

The Court thought that there was some merit to Prime-Site's position. Just as Prime-Site claimed, *after* the planning commission had voted on the 2020 Ordinance, Kevin Rulkowski, the city planner, stated, "Technically, we should open a public hearing." (ECF No. 24, Audio at 5:00–5:03.) And, this Court explained, that prompted someone, apparently Gary Torgow, the

2

chairperson of the commission, to say, "OK we're going to open a public hearing. Anybody want to speak? [Brief pause.] That's very wise. We're going to close the public hearing." (ECF No. 24, Audio at 5:05–5:15.) Indeed, the meeting minutes indicate that Torgow both opened and closed the public hearing within the same minute, at "7:04 p.m." (ECF No. 28, PageID.531.) All of this "suggest[ed] no legitimate public hearing was held." *Prime-Site*, 2020 WL 2556782, at *7.

But that was not the whole story from a full review of the underlying circumstances of the meeting. This Court explained that "[w]ell before the vote, Torgow, apparently reading from the meeting agenda, stated, 'We're moving to item number 6 *which is a public hearing. This is a public hearing* to consider text amendments to Article II [inaudible]. . . . *We have a public hearing now* as well as the sign amendments.'" *Prime-Site*, 2020 WL 2556782, at *7 (internal citations omitted) (emphasis added). "The inaudible portion," the Court said, "can be filled in by the meeting agenda; it says, '6. PUBLIC HEARING: A. Public Hearing to consider text amendments to Article II, Definitions and XVIII, Signs.'" *Id.* The Court added that "after Torgow moved to that agenda item and opened the public hearing, Rulkowski gave a description of the changes to the sign ordinance, *several audience members asked questions about it*, and Rulkowski answered the questions. Only after all of that did the planning commission take a vote." *Id.* (emphasis added). This Court continued, "So when Torgow then asked 'Anybody want to speak?' and then quickly said, 'That's very wise,' he seemingly did so because the substance of the public hearing had already occurred before the vote. Indeed, the audience laughed at Torgow's 'very wise' remark, indicating that it understood that the opening and closing of the public hearing was to comply with technical requirements." *Id.* Thus, this Court concluded, "Taking Torgow's statements in context, it simply is not reasonable to find that Michigan's public hearing requirement or the City's hearing requirement was not satisfied." *Id.*

3

**II.**

With that background, the stage is set for Prime-Site's motion for reconsideration. (ECF No. 34.) In its motion, Prime-Site argues that this Court made a clear error (or in the language of the local rule, issued a ruling with a "palpable defect," E.D. Mich. LR 7.1(h)(3)) by finding that "several audience members asked questions" about the new sign ordinance. (ECF No. 34, PageID.589.) Prime-Site says that the questions this Court heard on the recording of the meeting were posed by planning commissioners—not audience members. (*Id.*) In support of this assertion, Prime-Site submits the affidavit of Jay Carll (an owner of Prime-Site) who was in attendance at the meeting. Carll says that before the vote, no audience member asked a question and, in fact, Torgow did not invite any audience member to comment. (ECF No. 34, PageID.598–599.) And so, says Prime-Site, it was right all along: there was no public hearing before the vote.

The Court disagrees.

As an initial matter, even if it was the commissioners and not audience members who asked the questions about the proposed ordinance, it remains that before the vote and before any discussion or questions, Torgow twice stated that he was starting a public hearing. He said: "We're moving to item number 6 *which is a public hearing*. *This is a public hearing* to consider text amendments to Article II [inaudible]. . . . We have a *public hearing now* as well as the sign amendments." (Audio at 0:00–0:30 (emphasis added)). No matter who asked the questions, the fact remains that Torgow expressly stated he was starting a public hearing.

Second, even if it was the commissioners and not audience members who asked the questions, Prime-Site has not shown how that distinction matters to the law. In responding to the City's motion to dismiss on mootness grounds, Prime-Site relied on a provision of the Zoning Enabling Act, Mich. Comp. Laws § 125.3306(1), and a provision of Oak Park's zoning ordinance,

4

§ 2314.B. But having again examined the text of those two laws, nowhere do they demand audience participation for a "public hearing." Section 125.3306(1) says, "Before submitting its recommendations for a proposed zoning ordinance to the legislative body, the zoning commission shall hold at least 1 public hearing." And § 2314.B says, "[t]he planning commission shall make no decision except in a specific case and after requiring hearing, if applicable." Neither mentions audience participation. And presumably commissioners, like audience members, are permitted to ask questions during a public hearing. Prime-Site cites not one case interpreting the words "public hearing" in § 125.3306(1) or "hearing" in § 2314.B to mean "a hearing with audience participation."

True, Prime-Site stresses (and Carll avers) that Torgow never "invite[d]" anybody from the audience to participate. (ECF No. 34, PageID.599.) Apparently then, it is Prime-Site's position that regardless of whether the public actually participates, a public hearing at least requires the *opportunity* for the public to participate.

That position is sensible enough; but upon listening to the recording again, audience members had a chance to comment if they wanted to. At one point, Torgow stated, "Does *anybody* have any comments or Kevin [Rulkowski] if you wanna—anybody wants to talk us through any of this, we'll be happy to hear it." (Audio at 0:25–0:30 (emphasis added).) And at another point, Torgow again appeared to be fielding questions from anyone before acknowledging Joe Brown, a commissioner: "OK, Does *anybody*—yes, Joe." (Audio at 1:20–1:21 (emphasis added).) And after Rulkowski answered all the commissioner's questions, Torgow stated, "OK, *any other questions?* OK, we have received that document. And do you [Rulkowski] need any action from us?" (Audio at 4:18–4:27 (emphasis added).) At which point, Rulkowski stated that a vote was required, and then a vote ensued.

Given that (1) a public hearing on the proposed sign ordinance was an agenda item for the meeting, (2) consistent with that agenda item, Torgow expressly stated he was starting a public hearing, (3) before the vote, Torgow asked if "anybody" had questions and if there were "any" other questions, (4) Torgow again asked if there were any questions when he briefly opened the "technical[]" public hearing after the vote, and (5) there was laughter in response to Torgow's technical compliance with the public-hearing requirement, the Court adheres to its prior finding that "it simply is not reasonable to find that Michigan's public hearing requirement or the City's hearing requirement was not satisfied." *Prime-Site*, 2020 WL 2556782, at *7.

Prime-Site also makes a separate argument in its motion for reconsideration, which it did not include in its original briefing on the dispositive motions. (ECF No. 34, PageID.592–593.) It argues that a provision of the Planning Enabling Act and a provision of the Zoning Enabling Act (not the one just discussed) both required the planning commission to comply with the Open Meetings Act. (ECF No. 34, PageID.592 (citing Mich. Comp. Laws § 125.3304, § 125.3821(2)).) In turn, the Open Meetings Act allowed a member of the public to "address a meeting of a public body *under rules established and recorded by the public body*." Mich. Comp. Laws § 15.263(5) (emphasis added). And, in further turn, the rules established by the public body—i.e., the Oak Park Planning Commission's bylaws—stated that when a public hearing is required, "The order of presentation shall be as follows: Petitioner[,] Commission Consultants/Planning Staff[,] Correspondence[,] *Public Testimony*[,] [and] Commission Discussion/Decision." (ECF No. 34, PageID.6054 (emphasis added).) Prime-Site argues that the audio, the meeting minutes, and Carll's affidavit show that Oak Park did not comply with this bylaw. (ECF No. 34, PageID.593.) And from there, it follows (according to Prime-Site) that the Open Meetings Act was violated, which,

6

in turn, resulted in violations of the Planning Enabling Act and the Zoning Enabling Act. (*See id.*) The result, in Prime-Site's view, is that there is no 2020 Ordinance.

The Court declines to address this argument because Prime-Site did not make it in the initial round of briefing. True, in responding to the City's claim of mootness, Prime-Site did argue that the 2020 Ordinance was not validly enacted and, true, this argument is another way to say that. But Prime-Site previously focused on the absence of a public hearing. (*See* ECF No. 25, PageID.469.) It cited only Michigan Compiled Laws § 125.3306(1) and § 2314.B of the City's ordinance. (*See* ECF No. 25, PageID.468–469.) Prime-Site did not cite the provisions of the Planning Enabling Act or Zoning Enabling Act that it now relies on. (*See id.*) Nor did Prime-Site cite any planning-commission bylaw. (*See id.*) Generally, motions for reconsideration are limited to showing that a court clearly erred based on the arguments and materials before the court at the time of its initial decision. *See Roe v. Ford Motor Co.*, 439 F. Supp. 3d 922, 926 (E.D. Mich. 2020). After all, this is "*re*consideration, not initial consideration." *See Harley-Davidson Motor Co. v. Bank of New England-Old Colony, N.A.*, 897 F.2d 611, 616 (1st Cir. 1990). While the Court has some discretion to consider new argument or material, *see Roe*, 439 F. Supp. 3d at 926, the Court declines to do so here. Prime-Site offers no reason why it could not have previously made this argument about the commission's failure to follow its bylaw on the order of presentation. Nor is this argument so obviously correct that manifest injustice would result if it is not considered.

### III.

For the reasons given, Prime-Site's motion for reconsideration is DENIED.

SO ORDERED.

Dated: September 15, 2020

                                                  s/Laurie J. Michelson
                                                  LAURIE J. MICHELSON
                                                  UNITED STATES DISTRICT JUDGE